## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHIVANGI PATEL** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 14-4955** |
| | : | |
| **CAROLYN W. COLVIN, ACTING** | : | |
| **COMMISSIONER OF SOCIAL SECURITY** | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**Rufe, J.**                                                          **October 13, 2016**

### I.      INTRODUCTION

Plaintiff Shivangi Patel filed this action seeking judicial review of the final decision of

the Acting Commissioner of the Social Security Administration ("Commissioner") denying her

claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

Plaintiff seeks reversal of the Commissioner's decision, arguing that the Administrative Law

Judge's ("ALJ") finding that she is not disabled was not based on substantial evidence.  The

Commissioner argues that the ALJ's determination was supported by substantial evidence and

should be upheld.

United States Magistrate Judge Carol Sandra Moore Wells issued a Report and

Recommendation ("R&R"),[1] finding the ALJ's decision was based on substantial evidence, and

recommending that this Court affirm the final decision of the Commissioner.  Plaintiff has filed

objections to the R&R, to which Defendant has responded.  Upon this Court's careful,

independent consideration of the administrative record, the parties' submissions, and the

applicable law, the Court will remand for further proceedings.

---

[1] *See* Local R. Civ. Pro. 72.1.I(a); 28 U.S.C. § 636(b)(1)(B).

## II.      STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of the administrative proceedings and the pleadings of the parties.[2]  The court's review of legal issues is plenary, but its factual review is limited.[3]  The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[4]  For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5]  It is more than a mere scintilla, but requires less than a preponderance of the evidence.[6]  If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[7]  The substantial evidence standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."[8]  Despite the deference to administrative decisions, however, "courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."[9]

"A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's position with or without a remand to the

---

[2] 42 U.S.C. § 405(g).

[3] *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999).

[4] *See Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted); *Jesurum v. Sec'y of the U. S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

[6] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[7] *Fargnoli*, 247 F.3d at 38.

[8] *Schaudeck*, 181 F.3d at 431.

[9] *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Secretary for a rehearing."[10]  Finally, a district court may, in its discretion, "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[11]

## III.    SOCIAL SECURITY LAW

In order to qualify for benefits, a person must be found to have a disability, defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[12]  An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations ("the Regulations") to determine whether a disability exists.[13] At step one, the ALJ must determine whether the applicant is engaged in "substantial gainful activity;" if she is, the claim is denied.  If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step two whether the applicant suffers from a severe, medically determinable impairment which significantly limits her ability to work.  If the applicant has such an impairment, the ALJ must determine at step three whether the impairment found meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404, Subpart P, Appendix 1 ("the Listings"),[14] or has an equivalently debilitating medical condition.  If the applicant has a severe impairment that does not meet or equal an impairment in the Listings, the ALJ must determine at step four whether the applicant has the Residual Functioning Capacity ("RFC") to perform her former relevant work.  If the applicant does not have the RFC to perform her previous work, the Commissioner must establish at step five that

---

[10] *Gilliand v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986) (internal citations omitted).

[11] 28 U.S.C. § 636(b)(1)(c).

[12] 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).

[13] *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); 20 C.F.R. § 404.1520.

[14] *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

the applicant has the RFC to perform other work that exists in the national economy, considering her age, education and work experience.  At this fifth step, if the Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work; the ALJ must find the applicant to be disabled.

## IV. DISCUSSION

### A.  The ALJ's Decision

The ALJ issued his written decision denying benefits to Plaintiff after reviewing the evidence regarding Plaintiff's claim and holding a hearing at which Plaintiff and a vocational expert testified.  Plaintiff, who was born in 1988, filed the application on August 5, 2011, alleging disability beginning May 1, 2010.[15]  At step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, although Plaintiff was working part-time.[16]  At step 2, the ALJ found that Plaintiff has the following severe impairments: substance-induced mood disorder, antisocial personality disorder, polysubstance abuse and major depression with psychotic features.[17]

At step 3, the ALJ found that Plaintiff's severe impairments did not meet or equal an impairment in the Listings.  The Listings for Plaintiff's impairments may be met in two ways. The "B" requirements are met if the impairments result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

---

[15] R. 116-19.  It appears that Plaintiff's representative requested an appointment on August 5, 2011, and the appointment occurred on August 26, 2011.  R. 116.

[16] R. 14.

[17] R. 14.

decompensation, each of extended duration.[18]   The ALJ found that Plaintiff had no more than moderate difficulties in these categories and no episodes of decompensation of extended duration after the application date.[19]

The "C" requirements are met if the claimant has a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and either:  repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.[20]   The ALJ found that although Plaintiff had lived in a group home setting she was living independently at the time of the hearing, and concluded that she had mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence, or pace, and no episodes of decompensation of extended duration.[21] The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, and that her nonexertional limitations meant that she could perform unskilled, simple work performed in a stable environment.[22]

---

[18] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B).  As discussed below, episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

[19] R. 15-16.

[20] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C).

[21] R. 16.

[22] R. 16, 23.

At step 4, the ALJ found that Plaintiff had no past relevant work, and at step 5 concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to work that exists in the significant numbers in the national economy.  Therefore, the ALJ concluded that Plaintiff is not disabled.[23]

B. *The R&R*

The R&R concluded that the ALJ's opinion was supported by substantial evidence, and rejected Plaintiff's arguments to the contrary.  Specifically, the R&R agreed with the ALJ that hospitalizations that predated Plaintiff's application were properly discounted, but that even considering those hospitalizations, Plaintiff did not meet the Listings,[24] and the ALJ was not required to consult with a medical expert in determining whether Plaintiff's periods of decompensation equaled a Listing.[25]  The R&R also concluded that the ALJ reasonably explained the reasons for discounting the opinion of Dr. Zemenszky, Plaintiff's treating physician,[26] and properly weighed the opinions of other medical providers in determining Plaintiff's RFC.[27]  Finally, the R&R concluded that the ALJ did not err in considering Plaintiff's drug use in assessing her credibility, and was not required to apply the materiality analysis set forth in SSR 13-2p, because the ALJ concluded that Plaintiff was not disabled and therefore the ruling did not apply.[28]  Plaintiff has objected to the R&R, primarily restating the issues raised in her petition for review, and citing as fundamental error that the ALJ "found that Plaintiff was not disabled because her mental impairment included drug and alcohol abuse, rather than

---

[23] R. 24.

[24] R&R at 14.

[25] R&R at 15.

[26] R&R at 17-18.

[27] R&R at 19-21.

[28] R&R at 22-24.

determining if she were disabled by her mental impairment in the absence of drug and alcohol abuse, and thus entitled to SSI benefits notwithstanding the drug and alcohol abuse."[29] Defendant responded to the objections, stressing that the ALJ's fact-finding was properly grounded in the record, and that Plaintiff's drug use was properly considered in the context of Plaintiff's impairments and her credibility, particularly in light of her history of "seeking behaviors."[30]

    *C. Analysis*

    Upon careful review of the record, the Court agrees with Plaintiff's contention that the ALJ's opinion that Plaintiff's mental impairments did not meet or equal the Listing for mental disorders is not supported by substantial evidence.  In determining that Plaintiff had not suffered from three episodes of decompensation, each of extended duration, or the equivalent, the ALJ failed to consider Plaintiff's full medical history.[31]

    The relevant Listing describes what an episode of decompensation is and what constitutes repeated episodes of extended duration:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

---

[29] Pl.'s Objections at 2.

[30] Def.'s Response to Objections at 5-6.

[31] R 16-17.

The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.[32]

Plaintiff stated that her disability began on May 1, 2010, and filed the application on August 5, 2011.[33]  In assessing Plaintiff's treatment record, the ALJ stated that records before the application date of August 5, 2011, were "not from the relevant period."[34]  With regard to Plaintiff's hospitalizations, the ALJ noted which hospitalizations preceded the "alleged onset date"[35] and apparently discounted them on this basis.  This was error.  The regulations specifically acknowledge the importance of a comprehensive view of a claimant's condition over a significant period of time:

Need for longitudinal evidence. Your level of functioning may vary considerably over time. The level of your functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time. Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity.[36]

More specifically, the regulations state that a "complete medical history," means "the records of your medical source(s) covering *at least* the 12 months preceding the month in which you file your application."[37]  This is particularly relevant in this case, where Plaintiff alleged an onset

---

[32] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

[33] R. 116.

[34] R. 18.

[35] R. 19.

[36] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(2).

[37] 20 C.F.R. § 416.912(d)(2) (emphasis added).  Although the ALJ's opinion stated at the outset that he considered "the complete medical history consistent with 20 CFR 416.912(d)," R. 12, the fair reading of the opinion is that little or no weight was given to hospitalizations occurring before the application date.

8

date of May 1, 2010, and the hospitalizations occurred after that date, with most occurring within one year of the application date.  Of particular concern is the ALJ's apparent discounting of Plaintiff's lengthy hospitalization from July 21, 2011 through August 24, 2011, at the time of Plaintiff's application.[38]  In addition, it appears that the ALJ applied a mechanical assessment of Plaintiff's medical records, focusing on whether a hospitalization lasted more than two weeks and seemingly discounting or rejecting as irrelevant any that did not, without regard to whether "the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding" as required by the regulations.[39]

    Although this error alone warrants remand, and the Court need not reach Plaintiff's remaining arguments, the remand is for purposes of a full hearing to consider all of the evidence relating to Plaintiff's claimed disability.  In this regard, although the Court will not require the ALJ to obtain the assistance of a medical expert in evaluating the medical evidence, the Court notes that such evidence may be required if there is an issue of determining medical equivalence,[40] and that, given the complicated intersection between Plaintiff's depression and other disorders and her history of drug and alcohol use, an expert's opinion likely would be of benefit to the ALJ in determining whether Plaintiff is disabled.

## V.    CONCLUSION

    For the foregoing reasons, the Court sustains Plaintiff's objections to the R&R, grants Plaintiff's request for review, and remands for further consideration pursuant to the fourth sentence of 42 U.S.C. § 405(g).  An appropriate order will be entered.

---

[38] The ALJ stated that "[t]his would count as an episode of decompensation of extended duration, although it also occurred before the alleged onset date." R. 19.

[39] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).  The Court disagrees with the conclusion of the R&R that even if all of the hospitalizations were considered, they did not meet or equal the Listing.  That finding is better reached in the first instance by the ALJ upon full consideration of all the evidence.

[40] SSR 96-6p.